UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA DALE, et al.,

    Plaintiffs,

v.

CERBERUS SECURITY LLC,

    Defendant.
_____/

Case No. 1:25-cv-917

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs Pamela Dale, Clifton Dale, and Landon Walker bring this lawsuit against Defendant Cerberus Security LLC, alleging race and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; race discrimination and retaliation in violation of 42 U.S.C. § 1981; nonpayment of wages and retaliation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*; and race, sex, and age discrimination and retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.* Before the Court is Cerberus's partial motion to dismiss (ECF No. 10). For the reasons explained below, the Court will grant in part and deny in part the motion to dismiss.

### I. BACKGROUND

As alleged in the complaint, Plaintiffs all formerly worked for Cerberus in Muskegon County, Michigan. (Compl. ¶¶ 9–11, ECF No. 1.) Pamela and Clifton both worked as security guards, while Walker was a senior site supervisor. (*Id.*) Pamela is a 61-year-old African American woman, Clifton is a 61-year-old African American man, and Walker is an African American man. (*Id.* ¶¶ 13, 29, 50.) Walker is Clifton's stepson. (*Id.* ¶ 51.)

### A. Pamela Dale

Pamela began working for Cerberus in May of 2023, and her first assignment was to scan employee ID badges at an LG plant. (*See id.* ¶¶ 9, 14–15.) Soon after she began working, she was transferred to a different location at the site, "where it was very slow and she had no interaction with anyone[,] which made her feel very isolated." (*Id.* ¶ 16.) A Cerberus manager, Miranda Douglas, told her that employees would be reimbursed for fuel if they used their personal vehicles. (*Id.* ¶¶ 17–18.) However, Pamela was never reimbursed, and her hours were later decreased. (*Id.* ¶ 19.) She was also "told by management on numerous occasions that she did not meet the 'demographic' of what Cerberus was looking for." (*Id.* ¶ 20.) At some point, Pamela starting working another job due to the few hours that Cerberus assigned her, though she told her Cerberus supervisor that she could still work nights and weekends. (*Id.* ¶¶ 21–22.) However, Cerberus subsequently scheduled her for only one shift—on September 28, 2023—and then stopped scheduling her entirely. (*Id.* ¶¶ 22–23.) Douglas allegedly told Pamela "[o]n multiple occasions . . . that she was no longer on the schedule because of her age, sex, and ethnicity," and that the general manager, Parker Aerts, had said that Pamela "did not meet the demographics of what the company represented." (*Id.* ¶ 24.) Douglas also told Pamela "that removing staff from the schedule rather than firing them is Parker Aerts's standard procedure so that they are forced to quit." (*Id.* ¶ 26.) Pamela alleges that Cerberus chose to hire younger employees instead of scheduling her for more shifts. (*Id.* ¶ 28.)

### B. Clifton Dale

Clifton started working for Cerberus in June of 2023. (*Id.* ¶ 10.) Clifton similarly alleges that throughout his employment, Douglas was "told to tell [him]" that he "did not fit the demographics of the company." (*Id.* ¶ 48.) Furthermore, on September 28, 2023, Clifton noticed issues with his paycheck. (*Id.* ¶ 30.) Specifically, he had been paid for fewer hours than he had

worked, and he had not been paid time-and-a-half for working on Labor Day or for working as a temporary supervisor, despite assurances that he would be. (*Id.* ¶¶ 30–32.) The following day, Clifton complained to Aerts about the issue, but Aerts did not respond. (*Id.* ¶ 33.) Clifton then told his immediate supervisor, Heather Henderson, about the problem; she told him to email Aerts about it. (*Id.* ¶ 34.) Henderson emailed Aerts on October 5, but Aerts denied that Clifton had been underpaid. (*Id.* ¶¶ 35–36.) Rather, he claimed that the discrepancy in pay was to compensate for a prior overpayment. (*Id.* ¶ 36.) Clifton subsequently emailed Aerts and stated "that it was illegal . . . to take money out of his pay without notifying him." (*Id.* ¶ 43.) Aerts told Clifton that temporary supervisors did not get time-and-a-half pay, but that he would fix the holiday pay issue. (*Id.* ¶¶ 44–45.) Soon after these events, Cerberus stopped scheduling Clifton for shifts, and hired younger employees in his place. (*Id.* ¶¶ 47–49.)

### C. Landon Walker

Walker began working for Cerberus in June of 2020. (*Id.* ¶ 11.) Cerberus management told Walker "on multiple occasions . . . not to schedule black employees at certain locations because they did not fit the 'demographic.'" (*Id.* ¶ 58.) Walker also got involved with Clifton's pay issues in September of 2023. (*Id.* ¶ 51.) Clifton told Walker about the pay discrepancy, and Walker—who had heard about pay issues from other employees—reported the problem to Aerts. (*Id.* ¶¶ 51–53.) Aerts did not respond to any of Walker's calls or messages. (*Id.* ¶ 54.) Eventually, Walker "confronted Parker Aerts regarding Clifton's pay," and Aerts told him "to keep [Clifton] and everyone else silent." (*Id.* ¶ 55.) Walker responded "that there was not anything he could do." (*Id.* ¶ 56.) After this exchange, Walker "was treated differently by [Aerts] than his similarly situated co-workers." (*Id.* ¶ 57.) Aerts and another manager terminated Walker's employment "without reason" on October 23, 2023. (*Id.* ¶ 59.)

3

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

Plaintiffs' complaint contains the following claims: Title VII race and sex discrimination claims by Clifton and Pamela (Count I); Title VII retaliation claims by all Plaintiffs (Count II); 42

4

U.S.C. § 1981 racial discrimination claims by all Plaintiffs (Count III); § 1981 retaliation claims by all Plaintiffs (Count IV); ELCRA sex, age, and race discrimination claims by all Plaintiffs (Count V); ELCRA retaliation claims by all Plaintiffs (Count VI); ELCRA hostile work environment claims by all Plaintiffs (Count VII); an FLSA unpaid wages claim by Clifton (Count VIII); and FLSA retaliation claims by all Plaintiffs (Count IX). Cerberus moves to dismiss the Title VII claims (Counts I and II); the § 1981 and ELCRA retaliation claims (Counts IV and VI); the ELCRA hostile work environment claims (Count VII); and the FLSA retaliation claim as to Pamela and Walker (Count IX). The Court will address each claim in turn.

### A. Exhaustion of Title VII Claims

Cerberus argues that the Court should dismiss Plaintiffs' Title VII claims because Plaintiffs failed to exhaust their administrative remedies. "Before a plaintiff may sue under Title VII in federal court, she must first exhaust her administrative remedies, one component of which is timely filing a 'charge' with the [Equal Employment Opportunity Commission]." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 507–08 (6th Cir. 2011). Plaintiffs do not mention exhaustion in their complaint. They do attach evidence of exhaustion to their response to the motion to dismiss (*see* ECF Nos. 15-1, 15-2, 15-3), but the Court cannot consider these documents in resolving this motion, *see Bassett*, 528 F.3d at 430. Cerberus argues that the failure to plead exhaustion is fatal to the Title VII claims, and cites *Smith v. HealthSouth Rehabilitation Center of Memphis, Ltd.*, 234 F. Supp. 2d 812 (W.D. Tenn. 2002), for the proposition that "[t]he burden of demonstrating exhaustion lies with the plaintiff." *Id.* at 814 (citing *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002)).

However, Cerberus's assertion that Plaintiffs must include allegations about exhaustion in their complaint is incorrect. The Sixth Circuit has explained that "[f]ailure to exhaust in the context of Title VII claims is an affirmative defense that defendants 'bear[] the burden of pleading and

5

proving.'" *Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024) (second alteration in original) (quoting *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008)). Thus, Plaintiffs did not need to plead exhaustion to survive a motion to dismiss. *See Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014) ("While . . . exhaustion issues are susceptible to resolution on a motion to dismiss if a plaintiff affirmatively pleads himself out of court, a plaintiff need not respond to a motion to dismiss with affirmative matter raising a triable issue of fact on an affirmative defense."); *cf. Adamov v. U.S. Bank Nat. Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013) ("[A]dministrative exhaustion is not a jurisdictional requirement under Title VII."). Accordingly, the Court will deny the motion to dismiss to the extent it relies on a lack of exhaustion.

### B. Retaliation under Title VII, Section 1981, and the ELCRA

Cerberus contends that Plaintiffs have failed to state retaliation claims under Title VII, § 1981, or the ELCRA because they have not sufficiently alleged that they engaged in protected activity. The standard for retaliation under all three statutes is essentially the same. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018). To survive a motion to dismiss, a plaintiff "must allege that (1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019). Cerberus argues that Plaintiffs have not sufficiently alleged that they engaged in protected activity, or that their protected activity caused an adverse action.

A plaintiff engages in protected activity under Title VII if they "challenge[] an employment practice that [they] reasonably believe[] [i]s unlawful." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015). "This requirement includes objective and subjective components: the employee complaining of a hostile work environment must actually believe that

6

the conduct complained of constituted a violation of relevant law, and a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee would believe that the conduct complained of was unlawful." *Id.* at 646 (cleaned up). "[A] demand that a supervisor cease his/her [unlawful] conduct constitutes protected activity covered by Title VII." *Id.* (quoting *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015)). "Title VII does not protect an employee, however, if his opposition is merely a 'vague charge of discrimination.'" *Id.* (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)).

Beginning with Pamela's retaliation claim, she alleges that she told her supervisor she had to get another job due to her decreased hours with Cerberus, and on some subsequent date she was removed from the work schedule. Pamela's conversation with her supervisor does not amount to protected activity because she does not allege that she said anything to him about discrimination. A discussion with a manager does not qualify as protected activity if a plaintiff does not "specifically allege[] discriminatory employment practices in [that] discussion." *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 592 (6th Cir. 2007).[1] Plaintiffs argue that "[a] complaint about a reduction in hours, made in the context of repeated discriminatory comments, is plausibly a complaint about discriminatory treatment." (Pls.' Resp. 11, ECF No. 15.) But Pamela's complaint about a reduction in work hours does not "put [Cerberus] on notice that [Pamela] believed that [Cerberus]'s conduct was illegal." *Yazdian*, 793 F.3d at 646. Because the complaint does not indicate that Pamela told Hughes about alleged discrimination, she has not alleged that she engaged in protected activity and thus has failed to state a retaliation claim.

---

[1] Although *Fox* is an Age Discrimination in Employment Act (ADEA) case, courts can use ADEA case law to interpret Title VII's anti-retaliation provision. *Fox*, 510 F.3d at 591.

Turning to Clifton, he made various reports to Aerts and others about issues with his paycheck, and at one point told Aerts "that it was illegal . . . to take money out of his pay without notifying him." (Compl. ¶ 43.) Although this is an allegation of unlawful activity, it is not an allegation of discrimination, and thus is not protected activity under Title VII, the ELCRA, or § 1981. *See* 42 U.S.C. § 2000e-3(a) (barring retaliation against employees who "oppose[] any practice made an unlawful employment practice *by this subchapter*" (emphasis added)); Mich. Comp. Laws § 37.2701 (barring retaliation "against a person because the person has opposed a violation of *this act*"); *cf. Fox*, 510 F.3d at 591 ("In order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the ADEA."). Plaintiffs contend that "]c]omplaining about wage theft . . . in a workplace where race is explicitly used to make employment decisions . . . can also constitute opposition to disparate treatment under Title VII and § 1981." (Pls.' Resp. 10.) But nothing about Clifton's complaints put Cerberus on notice that he was opposing racial discrimination, rather than merely contesting the amount of money he was owed.

Finally, as to Walker, Plaintiffs allege that he reported various employees' alleged pay discrepancies to Aerts and ultimately confronted Aerts about Clifton's pay issues. Aerts told him "to keep [Clifton] and everyone else silent," and Walker responded that "there was not anything he could do." (Compl. ¶¶ 55–56.) This conversation was not protected activity under Title VII, § 1981, or the ELCRA, because Plaintiffs do not allege that Walker accused Aerts or Cerberus of discrimination. Plaintiffs note that Walker had previously been told "not to schedule black employees at certain locations," and they argue that Walker's comment that "there was not anything he could do" qualifies as a "refusal to enforce a discriminatory scheduling policy." (Pls.' Resp. 10.) But this characterization is untethered from the factual allegations, which do not

8

indicate that Walker ever complained to Aerts about the discriminatory scheduling policy. Thus, Walker also fails to state a claim for retaliation.

In sum, no Plaintiff states a claim for retaliation under Title VII, § 1981, or the ELCRA.

**C. Hostile Work Environment under the ELCRA**

Cerberus argues that Plaintiffs have failed to state hostile work environment claims under the ELCRA because they have not sufficiently alleged pervasive and severe discrimination. A hostile work environment is present when an employee is subject to unwelcome conduct or communication based on their protected status such that "a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *McDonald v. City of Detroit*, No. 367141, 2024 WL 5165390, at *4 (Mich. Ct. App. Dec. 18, 2024) (quoting *Quinto v Cross & Peters Co*, 547 N.W.2d 314, 320 (Mich. 1996)). "Factors to consider include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *CSX*, 643 F.3d at 512 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment . . . the court must consider the totality of circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).[2]

As an initial matter, Plaintiffs bring both hostile work environment and disparate treatment claims; Cerberus moves to dismiss the former but not the latter. Some of the allegations that

---

[2] The Court relies on Title VII cases in its ELCRA analysis because "[i]n interpreting the ELCRA specifically, [the Michigan Supreme] Court has encouraged using as guidance federal precedent interpreting Title VII of the federal Civil Rights Act, the statute on which the ELCRA was based." *Rouch World, LLC v. Dep't of C.R.*, 987 N.W.2d 501, 507 (Mich. 2022).

9

Plaintiffs cite in support of their hostile work environment claims—such as the fact that Cerberus stopped scheduling Pamela and Clifton and terminated Walker—more properly go to the issue of disparate treatment. "In a hostile-work-environment claim, 'the actionable wrong is the environment, not the individual acts that, taken together, create the environment.'" *Clay v. UPS, Inc.*, 501 F.3d 695, 708 (6th Cir. 2007) (quoting *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 638 (2007)). Thus, here the Court will focus on the allegations related to Plaintiffs' work environment.

Plaintiffs point to the following allegations in support of their claims. Pamela "was told by management on numerous occasions that she did not meet the 'demographic' of what Cerberus was looking for," and "[o]n multiple occasions the manager, Miranda Douglas . . . told Pamela that she was no longer on the schedule because of her age, sex, and ethnicity." (Compl. ¶¶ 20, 24.) Pamela was also "transferred to the west side of the site . . . which made her feel very isolated." (*Id.* ¶ 16.) Like Pamela, Clifton was told "[t]hroughout [his] employment" that he "did not fit the demographics of the company." (*Id.* ¶ 48.) Finally, Walker "was told on multiple occasions by Defendant not to schedule black employees at certain locations because they did not fit the 'demographic.'" (*Id.* ¶ 58.)

Based on these allegations, none of the Plaintiffs have stated a hostile work environment claim. As to Pamela's transfer to a more isolated location, Plaintiffs do not sufficiently allege that this transfer was connected to her membership in a protected class. Nor is a location transfer, without more detail, a substantial interference with her employment. As to the alleged racist statements from management, "[o]ccasional offensive utterances do not rise to the level required to create a hostile work environment." *CSX*, 643 F.3d at 512. Statements that are "insensitive, ignorant, and bigoted" do not produce a hostile work environment if they "more closely resemble

a 'mere offensive utterance' than conduct that is 'physically threatening or humiliating.'" *Id.* at 513 (quoting *Harris*, 510 U.S. at 23). While verbal conduct can create a hostile work environment if sufficiently severe or pervasive, *see Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997), Plaintiffs' allegations that these racist statements occurred on "numerous" or "multiple" occasions are not specific enough to indicate their pervasiveness. *Cf. Matthews v. Detroit Pub. Sch. Cmty. Dist.*, No. 19-13277, 2021 WL 4427176, at *13 (E.D. Mich. Sept. 27, 2021) (fact question as to whether offensive remarks constituted hostile work environment when they occurred "once per week over approximately one and a half years"). Ultimately, "[a]lthough despicable, [these] alleged racist statements are not sufficiently 'severe' or 'pervasive' standing alone" to state a hostile work environment claim. *CSX*, 643 F.3d at 513; *see also Clay*, 501 F.3d at 707–08 (fifteen incidents over two years did not create hostile work environment because most were "mere offensive utterances"); *Black*, 104 F.3d at 826 (frequent sexist comments did not create hostile work environment because they were not sufficiently severe or pervasive); *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir. 2000) (three sexist incidents over six months did not constitute hostile work environment).

In sum, considering the totality of the circumstances, Plaintiffs fail to state a hostile work environment claim.

### D. Retaliation under the FLSA

Although all three Plaintiffs bring FLSA retaliation claims, Cerberus only moves to dismiss Pamela and Walker's claims. The FLSA bars an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C § 215(a)(3). "To fall within the scope of the [FLSA] antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content

and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

In support of Pamela's retaliation claim, Plaintiffs point to the allegations that she did not get the fuel reimbursement she was promised, her hours were reduced, she complained to her supervisor about the hours reduction, and then she was removed from the schedule. (Pls.' Resp. 15.) None of these allegations indicate that Pamela informed Cerberus of alleged FLSA violations. All she told her supervisor was that her hours had been reduced, which Plaintiffs do not argue is a violation of the FLSA. Plaintiffs instead contend that "[Pamela's] complaint about this wage non-payment, followed by a reduction in hours and removal from the schedule, states a plausible claim for FLSA retaliation." (*Id.* at 15–16.) But Plaintiffs do not actually allege that Pamela complained about the wage non-payment. Thus, Pamela has not stated an FLSA retaliation claim.

Walker fails to state a retaliation claim for similar reasons. Plaintiffs argue that Walker complained to Cerberus about FLSA violations when he "confronted Parker Aerts regarding Clifton's pay." (*Id.* at 15.) But Plaintiffs provide no further details about this confrontation, so they have not sufficiently alleged that Walker put Cerberus on notice about potential FLSA violations. Clifton had several issues with his pay—not getting time-and-a-half on holidays, not getting extra wages for supervisory shifts, and not getting paid for certain hours—only the last of which is a potential FLSA violation. Plaintiffs argue that "unpaid holiday overtime and failure to pay a higher supervisory wage . . . are core FLSA concerns." (*Id.*) But Plaintiffs have not alleged that Clifton's holiday time exceeded forty hours a week, as is required for the FLSA's overtime provision to apply. *See* 29 U.S.C. § 207(a). Nor do Plaintiffs explain how the failure to pay a promised supervisory wage is an FLSA violation. Because it is unclear which pay issue Walker

discussed with Aerts, Plaintiffs have not sufficiently alleged that Walker engaged in protected activity as required for a retaliation claim.

### IV. REQUEST TO AMEND

Plaintiffs request that "if this Court finds the arguments made in Defendant's Motion to Dismiss compelling as to any of the challenged claims," the Court grant Plaintiffs leave to amend their complaint. (Pls.' Resp. 16.)  However, "[a] request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (second alteration in original) (internal quotation marks omitted).  The Court's local rules also require Plaintiffs to file a proposed amended pleading, *see* W.D. Mich. LCivR 5.7(f), which they have not done.  If Plaintiffs wish to amend their complaint, they can file a proper motion to do so.

### V. CONCLUSION

For the reasons explained above, the Court will grant in part and deny in part Cerberus's motion to dismiss.  Specifically, the Court will dismiss (1) all three Plaintiffs' retaliation claims under Title VII, § 1981, and the ELCRA (Counts II, IV, and VI); (2) all three Plaintiffs' hostile work environment claims under the ELCRA (Count VII); and (3) Pamela and Walker's retaliation claims under the FLSA (portions of Count IX).

An order will issue in accordance with this Opinion.

Dated: October 31, 2025         /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE